UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

John M. Preterotti,

      Plaintiff,

      v.                                              Civil Action No. 1:16-cv-91-jgm-jmc

Christopher Lora, Vermont State
Police Officer; John Doe, Station
Commander, Vermont State Police
Barracks; and John Doe, Director of
State Police,

      Defendants.

**<u>REPORT AND RECOMMENDATION</u>**
(Doc. 7)

      Plaintiff John M. Preterotti, proceeding *pro se*, brings this action pursuant to

42 U.S.C. § 1983 for money damages against Defendants Christopher Lora, a "Vermont

State Police Officer"; John Doe, the "Station Commander" at the Vermont State Police

Barracks; and John Doe, the "Director of State Police."  (Doc. 4 at 1–2.)  Preterotti

alleges that Lora violated his rights as follows: (1) under the Fourth Amendment, by

conducting a body cavity search of him which was beyond the scope of a search warrant

that had been issued to Lora, and by using excessive force in removing his clothing

during execution of the warrant (*id.* at 5, 6); (2) under the Fifth Amendment, by searching

his body cavity, which was "not included in the Search Warrant," and again, by using

excessive force to remove his clothes; and (3) under the Due Process Clause of the

Fourteenth Amendment, by "forcibly strip[ping]" him and searching his body cavity (*id.* at 6).  Preterotti seeks compensatory damages in the amounts of $450,000 and $350,000, and punitive damages in the amounts of $1,200,000 and $1,000,000, for Lora's violations of Preterotti's Fourth and Fifth Amendment rights.  (*Id.* at 7.)  Preterotti also seeks compensation against Lora in the amount of $2,000,000 for his "[p]ain and [s]uffering," and $1,550,000 for his "[m]ental and [e]motional suffering."  (*Id.*)

Pending before the Court is Lora's Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. 7.)  Preterotti has filed a Response in opposition to the Motion (Doc. 9), and Lora has filed a Reply (Doc. 10).  For the following reasons, I recommend that the Court GRANT Lora's Motion to Dismiss with leave to amend the Complaint.

## **Factual Background**

For purposes of deciding Lora's Motion to Dismiss, the Court accepts as true the factual allegations contained in Preterotti's Complaint, and views those facts "'in the light most favorable'" to Preterotti.  *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (quoting *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 148 (2d Cir. 2010)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Preterotti is an inmate at the Southern State Correctional Facility in Windsor, Vermont.  He asserts in the Complaint that Lora conducted a body cavity search of him, despite a search warrant "specif[ying]" that Preterotti would be subjected to "a visual strip search only" and not to a cavity search or any other "hands[-]on search."  (Doc. 4 at

5.)  More specifically, the Complaint alleges that Lora and another officer, using

"excessive force," "forcibly remove[d]" Preterotti's clothing below the waist and

conducted a body cavity search of him without justification.  (*Id.*)  According to the

Complaint, Preterotti did not comply with the commands of the officer and requested that

he be taken to the hospital before the search occurred.  (*Id.*)  The Complaint indicates that

the cavity search "was seen on a Video & Audio recording from the State Police

Barracks['] video recording device."  (*Id.*)  The Complaint does not allege when or where

the search occurred, or what evidence Lora was permitted to seize under the applicable

search warrant.

## Analysis

Lora claims Preterotti's Complaint should be dismissed under Rules of Civil

Procedure 12(b)(1) and 12(b)(6) because: (1) the Eleventh Amendment bars Preterotti

from suing Lora in his official capacity for monetary damages, and (2) to the extent the

Complaint sues Lora in his individual capacity, Preterotti fails to allege violations of any

constitutional rights.

## I.      Standard of Review under Rules 12(b)(1) and 12(b)(6)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule

12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate

it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  When a party moves

to dismiss a case pursuant to Rule 12(b)(1), "the defendant may challenge either the legal

or factual sufficiency of the plaintiff's assertion of jurisdiction, or both."  *Robinson v.

Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001).  "If 'the defendant challenges only

the legal sufficiency of the plaintiff's jurisdictional allegations,' 'the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff.'" *Id.* (first quoting *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000); then quoting *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)). When a court is "resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113.  The burden is on the plaintiff to prove subject matter jurisdiction by a preponderance of the evidence.  *Id.*

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *see also* Fed. R. Civ. P. 8(a)(2).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "Although plausibility is not a 'probability requirement,' [p]laintiffs must allege facts that permit 'more than a sheer possibility that a defendant has acted unlawfully.'" *Turkmen v. Hasty*, 789 F.3d 218, 233 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

Two principles guide a plausibility determination.  *See Iqbal*, 556 U.S. at 678. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Turkmen*, 789 F.3d at 233 (quoting *Iqbal*, 556 U.S. at 678).  "Second, only a complaint

4

that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007), *rev'd*, 556 U.S. 662 (2009)).

Where, as here, a complaint is filed *pro se*, it "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (alteration in original) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Consequently, when parties seek dismissal of *pro se* complaints, "courts 'apply[ ] a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel.'" *Thompson v. Pallito*, 949 F. Supp. 2d 558, 571 (D. Vt. 2013) (alteration in original) (quoting *Lerman v. Bd. of Elections in the City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000)). Still, a complaint filed by a *pro se* plaintiff "must state a plausible claim for relief." *Hogan*, 738 F.3d at 515.

## II.      Eleventh Amendment Immunity

Lora argues that he is entitled to sovereign immunity under the Eleventh Amendment to the extent that he is sued in his official capacity.  (Doc. 7 at 5.)  Preterotti responds that sovereign immunity "has never been used to grant immunity and protection to those involved in criminal acts."  (Doc. 9 at 2.)

The Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court."  *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  The doctrine of sovereign immunity under the Eleventh Amendment also "protects state officials sued for damages in their official capacity."  *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).  There are two exceptions to Eleventh Amendment immunity, however: a state can waive its immunity to suit, or Congress can abrogate a state's immunity by statute.  *Id.* at 66.

Lora is immune from suit in his official capacity, given that he is an officer with the Vermont State Police (*see* Doc. 4 at 1), and "the Vermont State Police is an entity within the Vermont Department of Public Safety, a state agency."  *Woodman v. Vermont State Police*, No. 1:12–cv–43–jgm, 2012 WL 5409662, at *2 (D. Vt. Nov. 6, 2012);

6

*see Levesque v. Vermont*, No. 5:12–cv–159, 2014 WL 4546785, at \*4 (D. Vt. Sept. 12, 2014) (listing Vermont State Police and other entities as "Vermont state agencies immune from suit").  Moreover, neither exception to sovereign immunity applies: the State of Vermont has not waived its immunity, *see Thompson*, 949 F. Supp. 2d at 572 ("Vermont has not waived its sovereign immunity under § 1983."), and Congress has not abrogated Vermont's immunity by statute, *see Muhammad v. Gold*, No. 1:05–CV–146, 2007 WL 3088133, at \*2 (D. Vt. Oct. 23, 2007) ("There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983.").

Accordingly, I recommend that the Court DISMISS Preterotti's claims for money damages against Lora in his official capacity.[1]

## III.    Constitutional Claims—Individual Capacity

Lora next argues that the Court should dismiss Preterotti's claims against him in his individual capacity because the deposition transcript attached to the Complaint

---

[1] Lora moves for dismissal based on Eleventh Amendment immunity pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Doc. 7 at 3–5.)  "[W]ithin the Second Circuit, the question of whether a motion to dismiss made on sovereign immunity grounds should be reviewed under Rule 12(b)(1) or under Rule 12(b)(6) remains unresolved."  *JTE Enters., Inc. v. Cuomo*, 2 F. Supp. 3d 333, 338 (E.D.N.Y. 2014); *see also Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) ("[W]hether the claim of sovereign immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense is an open question in the Supreme Court and the Second Circuit." (citing *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998))); *Jude v. New York State*, No. 07 Civ. 5890(RJS), 2009 WL 928134, at \*1 n.2 (S.D.N.Y. Mar. 30, 2009) ("Although Defendants invoke Rule 12(b)(1) as the basis for their sovereign immunity defense, it is unclear whether a motion to dismiss on Eleventh Amendment grounds is properly raised as a challenge to the Court's subject matter jurisdiction under Rule 12(b)(1), or a challenge to the legal sufficiency of the Amended Complaint under Rule 12(b)(6).").  Accordingly, I recognize that this is an "open question" and recommend granting dismissal on the grounds of sovereign immunity pursuant to Rule 12(b)(1).

"directly contradicts" the allegation that a manual cavity search occurred, and the remaining alleged constitutional violations are "merely conclusory statements unsupported by any factual allegations."  (Doc. 7 at 4.)

### A.    Extra-Pleading Materials

Preterotti's Complaint includes two attachments: (1) the transcript of the "Deposition of Trooper Christopher Lora" dated June 10, 2014 (*see* Doc. 4-1);[2] and (2) three DVDs containing video footage from a police cruiser (*see* Doc. 4-2).  As discussed below, in deciding the pending Motion to Dismiss, I have considered the deposition transcript but not the DVDs.

When a court evaluates a complaint under a Rule 12(b)(6) motion, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  Also, "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Id.* at 153 (quoting *Int'l Audiotext Network*, 62 F.3d at 72).

### 1.    Lora's Deposition

Although it is proper to consider a "*written instrument* attached to [the Complaint] as an exhibit," *Chambers*, 282 F.3d at 152 (emphasis added), "written instruments" are

---

[2] It appears that Lora's deposition was taken by counsel for Preterotti in the course of criminal proceedings against Preterotti.  (*See* Doc. 4-1 at 1, 3.)

generally considered to be "documents evidencing legal rights or duties[,] such as deeds, wills, bonds, leases, insurance policies[,] or security agreements." *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, 226 F.R.D. 175, 177 (S.D.N.Y. 2005); *see also* Fed. R. Civ. P. 10(c). Clearly, a deposition transcript is not akin to a deed, will, lease, or similar document, as it does not evidence any legal rights or duties. Moreover, the deposition transcript at issue here is not explicitly referenced in the Complaint, and Preterotti does not appear to have substantially relied on it in drafting the Complaint. *See Chambers*, 282 F.3d at 153 ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." (emphasis omitted)).

Nonetheless, Lora does not challenge Preterotti's submission of the deposition transcript, and in fact relies on it to refute Preterotti's claims. (*See* Doc. 7 at 6–9.) Thus, and in an effort to liberally construe Preterotti's *pro se* filings, I have considered the deposition transcript.

### 2.    Video Footage

On the other hand, I have not considered the three DVDs attached to the Complaint. "[The Second Circuit] ha[s] never addressed whether Fed. R. Civ. P. 10(c), which provides that a 'written instrument' included as an exhibit to a pleading 'is a part of the pleading for all purposes,' extends to videos." *Garcia v. Does*, 779 F.3d 84, 87 n.2 (2d Cir. 2015). In *Garcia*, the Second Circuit considered videos submitted by the defendants, but only because the plaintiffs had conceded they were "incorporated into the

[c]omplaint by reference" and because "no party contest[ed] the inclusion of [them] in the [c]ourt's review of the [c]omplaint." *Id.*

Here, by contrast, Lora points out that the three DVDs attached to the Complaint (*see* docket entry for Doc. 4, dated April 15, 2016) are not the same videos referenced in the Complaint (*see* Doc. 4 at 5–6). (*See* Doc. 10 at 2 n.1.) Specifically, the Complaint alleges that "all of the incident" (presumably referring to the body cavity search, which is the sole subject of the Complaint) "was seen on a Video & Audio recording from the State Police Barracks['] video recording device." (Doc. 4 at 5; *see also id.* at 6 ("[T]he search of the plaintiff's [anus] area . . . as shown in the video recording.").) The Court has examined the videos, and the three DVDs attached to the Complaint contain video footage from a police cruiser, not from the barracks. Not only is footage from the cruiser not mentioned in or integral to the Complaint, it is unclear how that footage is relevant to the subject matter of this action. Accordingly, I decline to consider the DVDs in the analysis below. *See Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 720 (S.D.N.Y. 2015) ("[W]here courts *have* considered video evidence in conjunction with 12(b)(6) motions, the video has either been offered by the plaintiff as part of its pleadings or the plaintiff has incorporated the video by reference after the defendant introduced the video.").

## B.    Fourth Amendment

Lora asserts that Preterotti's constitutional claims against him in his individual capacity fail because Lora's deposition transcript reveals that no body cavity search was conducted; thus, no constitutional violation occurred. (Doc. 7 at 6.)

### 1.    Body Cavity Search

As noted above, the Complaint alleges that Lora violated Preterotti's constitutional rights under the Fourth Amendment by conducting an unconsented-to body cavity search of Preterotti at the police barracks, which was beyond the scope of the search warrant issued to Lora.  (*See* Doc. 4 at 5, 6; *see also* Doc. 9 at 2 (Preterotti conceding that "[t]he discrepancies in question lie in the events at the Vermont State [Police] barracks").)  According to Preterotti, the warrant was for "a visual strip search only."  (Doc. 4 at 5.)

"The Fourth Amendment requires a warrant to identify precisely the items meant to be searched and seized, thereby protecting against general searches that lack probable cause and/or go beyond the warrant's scope."  *United States v. Catapano*, No. 05 CR 229(SJ)(SMG), 2008 WL 3992303, at *3 (E.D.N.Y. Aug. 28, 2008) (citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971)).  A "general search" has been defined as "one that is (1) not conducted in good faith, and (2) includes a 'widespread seizure of items that were not within the scope of the warrant.'"  *Id.* (quoting *United States v. Liu*, 239 F.3d 138, 140 (2d Cir. 2000)).  "[A] 'strip search' occurs when a suspect is required to remove his clothes."  *Gonzalez v. City of Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013).

Lora argues that the deposition transcript attached to the Complaint discredits Preterotti's allegations and reveals that Lora did not engage in a body cavity search of Preterotti, as alleged in the Complaint.  (*See* Doc. 7 at 6, 8.)  The Second Circuit has held: "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011).  Applied

here, if the statements made by Lora in the deposition transcript contradict the allegations made in the Complaint, including the allegation that Lora searched Preterotti's body cavity, these allegations may not be accepted as true.

The deposition transcript indicates that Lora testified as follows.  After Preterotti was arrested and transported to the police barracks, Lora told him that he would be searched incident to his arrest.  (Doc. 4-1 at 26.)  After Preterotti refused to comply, Lora applied for a warrant to conduct a strip search.  (*Id.* at 27.)  A judge signed the warrant (*id.* at 36), and Lora and another officer attempted to execute it (*id.* at 30).  The transcript states:

> ATTY. BRILL:  [I]n doing that[,] you pulled his pants down[,] right?
> TPR. LORA:  We didn't even get to that point.  We informed him that we had a search warrant to execute a strip search . . . , we took the handcuffs off so we could begin to disrobe him[,] and he began to resist our efforts and fight with us.
> ATTY. BRILL:  [H]e's on the ground and his pants are off[?]
> TPR. LORA:  We started to try and get his pants off[,] yes.
> ATTY. BRILL:  Okay.  And . . . at that point his butt is clenched.  Is that fair to say?
> TPR. LORA:  Yes.
> ATTY. BRILL:  Okay and are you able to see anything at this point?
> TPR. LORA: No[;] at that point we were still fighting with him to try and execute the warrant.
> ATTY. BRILL:  And so . . . do you make attempts to go inside?  To try to get . . . .  Do you make any attempts to you know separate his butt cheeks so you can see?
> TPR. LORA:  Yeah, I mean we were trying to convince him to release and you know let us execute the warrant and he was kind of writhing on the ground and we really couldn't even disrobe him to do a full strip search.
> ATTY. BRILL:  Well I know you were making efforts to convince him to you know release his butt, you know from being clenched.
> TPR. LORA:  Well I mean we were trying to get him just to stop fighting with us.  I mean it wasn't even just the clenching of his butt.  It was just he was not cooperating in any fashion.
> ATTY. BRILL:  Right.  And you were physically touching him at this time.

> TPR. LORA:  Yes, yes we were.
> ATTY. BRILL:  And he's yelling and screaming on the ground.
> TPR. LORA:  Yes he was.
> ATTY. BRILL:  And he's saying . . . he doesn't want to . . . have you . . . reach inside his anus.  He doesn't want you to be doing that.  And he's very upset about that.
> TPR. LORA:  Yes he was.
> ATTY. BRILL:  As that's going on . . . he asks to go to the hospital.
> TPR. LORA:  He said he would allow hospital personnel to execute the warrant.

(*Id.* at 30–32.)  The officers then took Preterotti to the hospital, where he voluntarily produced what Lora believed to be 85 bags of heroin from "his butt crack."  (*Id.* at 33–34.)

This testimony does not permit a reasonable inference that Lora searched Preterotti's body cavity.  Rather, it appears Lora was unable to conduct a strip search of Preterotti pursuant to the warrant.[3]  Given the law discussed above, the deposition testimony "controls," and the conclusory allegations contained in the Complaint regarding a forced search of Preterotti's body cavity are "not accepted as true."  *Amidax Trading Grp.*, 671 F.3d at 147; *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 222 (2d Cir. 2004) (complaint dismissed where allegations "belied" by letters attached to complaint); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) ("[A] court need not

---

[3]  In his Response, Preterotti states that the "DVD video evidence submitted with the [C]omplaint . . . contradicts statements made by Trooper Lora during his sworn testimony and clearly shows a violation of [Preterotti's] [Fourth] Amendment [r]i[]ghts."  (Doc. 9 at 1.)  Preterotti further states that the statements made by Lora in the deposition transcript "are virtually contradicted . . . when compared to the events as captured by the security cameras at the Vermont State [P]olice barracks" (*id.* at 2), and that "the DVD evidence presented with the [C]omplaint is m[]ore conclusive and provides more merit[ori]ous facts th[a]n the testimony of Trooper Lora" (*id.* at 5).  Because I have not considered the DVDs for the reasons discussed above, I do not address these claims.

feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely.").

Therefore, I recommend that the Court DISMISS Preterotti's Fourth Amendment claim against Lora regarding the body cavity search.

### 2. Excessive Force

Lora also argues that the Complaint "is devoid of any factual allegations that [he] used excessive force during his attempt to execute the valid search warrant." (Doc. 7 at 10.) Lora further asserts that his deposition testimony demonstrates that when Preterotti resisted officers' attempt to execute a strip search, they complied with Preterotti's request to be taken to the hospital to have hospital staff conduct the search instead. (*Id.*)

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). In considering whether force was excessive, courts must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. In

14

other words, "the inquiry into whether force is reasonable requires an objective examination of the totality of circumstances." *Crowell v. Kirkpatrick*, 667 F. Supp. 2d 391, 406 (D. Vt. 2009), *aff'd*, 400 F. App'x 592 (2d Cir. 2010) (internal quotation marks omitted).

The Complaint's allegations of excessive force include claims that Lora and another officer forcibly stripped Preterotti of his clothing and conducted a body cavity search without justification and beyond the bounds of the warrant. (Doc. 4 at 5, ¶¶ 2–6.) Given the deposition testimony described above, these allegations fail. Moreover, the Complaint lacks an allegation of even *de minimis* injury. *Jackson v. City of New York*, 939 F. Supp. 2d 219, 231 (E.D.N.Y. 2013) (stating that the Second Circuit "recognize[s] the concept of *de minimis* injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed"). The deposition transcript reveals that the only "physical[] touching" that occurred was when Preterotti was noncompliant with Lora and another officer's attempt to execute the subject search warrant. (Doc. 4-1 at 31.) Specifically, Lora testified at his deposition that Preterotti was "writhing on the ground," "fighting with [the officers]," and "not cooperating in any fashion," as he and another officer attempted to execute the warrant. (*Id.*) Depending on the circumstances, noncompliance may justify an officer's use of force. *See Jones*, 465 F.3d at 61 (describing arrestee's resistance as possible justification for use of force). Thus, Preterotti's noncompliance justified some use of force by Lora in attempting to execute the warrant.

I therefore recommend that the Court DISMISS Preterotti's Fourth Amendment claim against Lora for excessive use of force.

### C.      Fifth and Fourteenth Amendments

Lora next argues that Preterotti has failed to state a claim under either the Fifth or Fourteenth Amendment because the Complaint contains no factual allegations that Preterotti was "compelled to make self-incriminating or inculpatory statements that were later used against him in a criminal proceeding" and because the unsupported allegations in the Complaint are "belied by the materials [Preterotti] attached to the Complaint." (Doc. 7 at 10–11.)  I agree, and further find as follows.

Pretrial detainees may raise excessive force claims under the Fifth Amendment, *Ortiz v. Pearson*, 88 F. Supp. 2d 151, 160 (S.D.N.Y. 2000), and, as noted above, the Complaint contains an excessive force claim.  Preterotti, however, does not allege that he was subjected to excessive force *as a pretrial detainee*.  *See Black's Law Dictionary* (10th ed. 2014) (defining "pretrial detention" as "[t]he holding of a defendant before trial on criminal charges either because the established bail could not be posted or because release was denied").  Because the excessive force claim relates to circumstances surrounding the immediate aftermath of Preterotti's arrest, it must be reviewed under the Fourth—not the Fifth—Amendment.

Furthermore, the U.S. Supreme Court has stated that, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *County of*

*Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (alteration in original) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).  The Fourth Amendment, and not the Fourteenth or the Fifth, properly guides the analysis here.

Accordingly, I recommend that the Court DISMISS Preterotti's Fifth and Fourteenth Amendment claims.

## IV.   Qualified Immunity

Finally, Lora argues that he is entitled to qualified immunity, given that the deposition transcript attached to the Complaint "clearly demonstrates" that he did not conduct a manual orifice search of Preterotti, and thus the Complaint fails to allege a violation of a constitutional right.  (Doc. 7 at 10.)  As stated above, he also argues that the facts set forth in Preterotti's Complaint do not make out an excessive force claim and fail to allege constitutional violations of Preterotti's Fifth and Fourteenth Amendment rights.  (*Id.* at 10–11.)  In response, Preterotti asserts that Lora "lost th[e] protection [of qualified immunity] when he exceeded the parameters of the court-issued strip search warrant" and "[a]ssaulted [Preterotti] both physically and sexually."  (Doc. 9 at 4.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Haynes v. Johnson*, 629 F. App'x 84, 85 (2d Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "In deciding qualified immunity, courts ask whether the facts shown [i] 'make out a violation of a constitutional right,' and [ii] 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'"  *Winfield v. Trottier*,

710 F.3d 49, 53 (2d Cir. 2013) (brackets in original) (quoting *Pearson*, 555 U.S. at 232).

"A right is 'clearly established' when '[t]he contours of the right [are] sufficiently clear

that a reasonable official would understand that what he is doing violates that right.'"

*Haynes*, 629 F. App'x at 85 (alterations in original) (quoting *Jackler v. Byrne*, 658 F.3d

225, 242 (2d Cir. 2011)).  Also, "[t]he judges of the district courts and the courts of

appeals should be permitted to exercise their sound discretion in deciding which of the

two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.

    Generally, a qualified immunity defense is addressed at the summary judgment

stage because it usually depends on the facts of the case, making dismissal at the pleading

stage inappropriate.  *See King v. Simpson*, 189 F.3d 284, 289 (2d Cir. 1999); *Taylor v.

Vermont Dep't of Educ.*, 313 F.3d 768 (2d Cir. 2002).  A motion to dismiss on qualified

immunity grounds may be granted, however, "if the complaint fails to allege the violation

of a clearly established constitutional right."  *Woods v. Goord*, No. 01 CIV. 3255(SAS),

2002 WL 731691, at *10 (S.D.N.Y. Apr. 23, 2002) (quoting *Hardy v. Jefferson Cmty.

Coll.*, 260 F.3d 671, 677 (6th Cir. 2001)); *see also Skyers v. Sommer*, No. 12 Civ. 3432,

2016 WL 4484241, at *6 (S.D.N.Y. Aug. 23, 2016) (defendant entitled to qualified

immunity on motion to dismiss, where plaintiff had not established his personal

involvement in the violation of "any clearly established constitutional right").

    Given the above findings that the Complaint fails to allege a violation of a

constitutional right, Lora is entitled to the defense of qualified immunity.  I therefore

recommend that the Court GRANT Lora's Motion on this ground.

## V.     John Doe Defendants

Although not addressed in Lora's Motion, I recommend dismissing the Complaint's allegations against John Doe Defendants the "Station Commander" and the "Director of State Police."  (Doc. 4 at 1.)  Courts may dismiss claims against Doe defendants *sua sponte* where the plaintiff fails to meet the pleading standard with respect to those claims.  *See Melendez v. Nassau County*, No. 10–CV–2516 (SJF)(WDW), 2010 WL 3748743, at *5 (E.D.N.Y. Sept. 17, 2010); *Hanks v. Doe*, No. 5:09-CV-1109 (NPM/GHL), 2010 WL 2516801, at *4 n.4 (N.D.N.Y. May 18, 2010), *adopted*, 2010 WL 2516685 (N.D.N.Y. June 14, 2010).  For instance, in *Melendez*, the court dismissed claims against two Jane Doe defendants because, although they were listed in the complaint's caption, the complaint provided "no factual basis for their involvement" in the relevant facts.  2010 WL 3748743, at *5.  The court stated: "Without any factual allegations[,] these [Doe] Defendants are not put on fair notice of the claims being brought against them."  *Id.*; *cf. Fanelli v. New York*, 51 F. Supp. 3d 219, 234–35 (E.D.N.Y. 2014) (declining to dismiss claims against Doe defendants because the complaint detailed their involvement in the alleged constitutional violations).

Here, the Complaint provides no factual basis for any claims against either Doe Defendant.  Even viewing the Complaint's sole reference to "another officer" (Doc. 4 at 5) in the light most favorable to Preterotti, plausible constitutional claims cannot be inferred.  None of the three claims in the Complaint refer specifically to the John Does, and Preterotti seeks damages against Lora alone.  (*See id.* at 6, 7.)  Moreover, the officers referenced in the deposition do not appear to be the Doe Defendants referenced in the

Complaint.  (*Compare id.* at 2, *with* Doc. 4-1 at 5, 12 (referring to Officer Checchi and Sergeant Buckley).)

Accordingly, I recommend that the claims against the two John Doe Defendants be DISMISSED.

## VI.    Leave to Amend

Given Preterotti's status as a *pro se* litigant, and the fact that he has not yet amended, he should be granted leave to amend his Complaint.  In the Second Circuit, "[a] *pro se* complaint 'should not [be] dismiss[ed] without [the court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'"  *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (first and second alterations in original) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  It cannot be said that a liberal reading of Preterotti's Complaint gives no indication that a valid claim might be stated.  Therefore, Preterotti should be granted leave to amend.  The amended filing should be titled "Amended Complaint" and should contain all claims against all parties, as it will supersede the original Complaint in all respects.

<u>Conclusion</u>

For these reasons, I recommend that the Court GRANT Defendant's Motion to Dismiss (Doc. 7), and I further recommend that, if this Report and Recommendation is adopted by the Court, Preterotti be provided 30 days to file an amended complaint, and that his failure to file an amended complaint within such 30 days should result in the dismissal of this action with prejudice.

Dated at Burlington, in the District of Vermont, this 6th of October, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).